OPINION OF THE COURT
Titone, J.
The question presented by this appeal is whether a municipal agency responsible for issuing building permits may require a developer to submit an Environmental Impact Statement (EIS) as a prerequisite to approving the permit application. Because the Village Ordinance at issue here does not entrust the Building Inspector with the type of discretion which would allow a permit grant or denial to be based on the environmental concerns detailed in an EIS, building permit issuance does not constitute an agency "action” within the purview of the State Environmental Quality Review Act (SEQRA) or the parallel Local Law. Accordingly, we conclude that the courts below properly vacated the preliminary injunction barring construction and dismissed the Village’s complaint.
The parties’ dispute arose from defendant developer’s applications to plaintiff Village of Atlantic Beach and the Town of Hempstead for building permits to construct 11 retail stores on a parcel of commercially zoned real property. Although both localities subsequently issued building permits, defendant was forced to halt construction on the week-old project after the Village issued "stop work orders” on the ground that defendant had failed to comply with a local version of SEQRA that required submission of a statement detailing the project’s possible environmental effects (see, Local Laws, 1977, No. 2 of Incorporated Village of Atlantic Beach). When defendant defied the stop work orders and recommenced construction, plaintiff Village instituted the present action to enjoin defendant from undertaking any further construction on the property in the absence of compliance with SEQRA.
Supreme Court granted the Village’s motion for a preliminary injunction seeking to bar further construction. The court later vacated the injunction, however, and awarded defendant partial summary judgment dismissing the complaint on the ground that the Village, in effect, had impermissibly involved itself in zoning and land use matters in violation of the Nassau County Charter, which exclusively delegated such concerns to the Town of Hempstead. Supreme Court adhered *325 to its initial determination on reargument and the Appellate Division affirmed, holding that issuance of a building permit under the regulatory scheme in question was a ministerial act, not qualifying as an agency "action” which would require preparation of an EIS. We now affirm. if
At the core of the parties’ dispute here, and the predicate for the stop work orders, is defendant developer’s failure to submit a statement, pursuant to Local Law No. 2 of the Incorporated Village of Atlantic Beach, assessing the proposed project’s potential impact on the environment. Local Law No. 2 was modelled after SEQRA, which was enacted to compel agencies to consider the environmental effects of their activities "[a]s early as possible” in the planning process (ECL 8-0109 [4]) and to encourage them to develop alternatives to a proposed action in order to mitigate environmental damage. Thus, the Local Law’s proper application depends, in this context, on our construction of SEQRA.
To promote the Legislature’s goals, and to provide an informational tool to aid in the decision-making process, SEQRA requires agencies to prepare an EIS "on any action they propose or approve which may have a significant effect on the environment” (ECL 8-0109 [2] [emphasis supplied]). The statute broadly defines the term "action” to include projects or activities that the agency either directly undertakes or funds, policy and procedure-making and the issuance of permits, licenses or leases (ECL 8-0105 [4] [i], [ii]). Expressly exempted from the definition, however, are "official acts of a ministerial nature, involving no exercise of discretion” (ECL 8-0105 [5] [ii]).
Issuance of a building permit may qualify as an exempt ministerial act (see, e.g., Matter of Filmways Communications v Douglas, 106 AD2d 185, affd 65 NY2d 878), or may instead constitute agency "action” subject to SEQRA (see, e.g., Matter of Pius v Bletsch, 70 NY2d 920), depending on the regulatory scheme underlying the act. In Filmways, we affirmed, on the opinion below, the Appellate Division’s holding that SEQRA was not implicated by the building inspector’s decision to grant or deny a building permit application because that activity involved "no latitude of choice” (106 AD2d, at 187). Since under the applicable regulations a decision on the permit application could only be predicated on the applicant’s compliance or noncompliance with the Building Code, the determination constituted a SEQRA-exempt ministerial act. In *326 contrast, the regulations for building permit issuance involved in Pius permitted the issuing agency to exercise "site plan approval powers” and "the authority to make certain case-by-case judgments on site plan design” (70 NY2d, at 922). Thus, because the Director was not required to issue a permit upon the applicant’s compliance with a prescribed set of conditions, but could exercise considerable discretion in acting on the application, the regulations in question removed permit issuance from the realm of ministerial acts exempt from SEQRA’s provisions.
In determining whether an agency decision falls within SEQRA’s purview, however, the courts cannot rely on a mechanical distinction between ministerial and discretionary acts alone. Nor should they rely, as the Appellate Division did here, on distinctions based on whether the acting agency is ultimately vested with zoning or "land use” authority. Rather, the pivotal inquiry, which was alluded to in Filmways and Pius and which emerges here, is whether the information contained in an EIS may " 'form the basis for a decision whether or not to undertake or approve such action’ ” (Filmways, 106 AD2d, at 187, supra, citing ECL 8-0109 [2]; see also, Pius, 70 NY2d, at 922, supra; SEQR Handbook, at 12-13 [1992]). In other words, when an agency has some discretion, but that discretion is circumscribed by a narrow set of criteria which do not bear any relationship to the environmental concerns that may be raised in an EIS, its decisions will not be considered "actions” for purposes of SEQRA’s EIS requirements.
Logically, where an agency is empowered to "act” by granting or denying a permit based only on compliance with a conventional Building Code or fire safety regulations, it makes little sense to require preparation of an EIS. Such a requirement would certainly not advance the Legislature’s clear intent that an EIS be used as an informational tool to aid in the planning process (see, ECL 8-0109 [2]).
In contrast, the discretion involved in the exercise of site plan approval powers which was vested in the issuing agency in Pius is illustrative of agency "action” because a relationship exists between the types of decisions to be made and the environmental concerns enumerated in an EIS. In Matter of E.F.S. Ventures Corp. v Foster (71 NY2d 359), we recognized that the exercise of site plan approval powers requires "[a] large measure of discretion” (id., at 370). Indeed, this function *327 involves analysis of "the proposed location of the buildings, parking areas, and other installations on the plot, and their relation to existing conditions, such as roads, neighboring land uses, natural features, public facilities, ingress and egress roads, interior roads, and similar features” (5 Ziegler, Rathkopfs The Law of Zoning and Planning, Site Plan Review § 62.01 [1] [4th ed]). Thus, site plan approval necessarily encompasses land use and environmental considerations, and a building inspector vested with that type of discretion or decision-making authority clearly would be aided by, and entitled to rely upon, the information contained in an EIS.
A review of the type and scope of information contained in an EIS underscores the illogic of requiring an EIS where the acting agency has no authority to approve a proposal based on those environmental concerns. In an EIS, a project sponsor is requested to provide a "Site Description,” which details the present land use of the project site and of contiguous land, soil type and the presence of any endangered species, a "Project Description,” which indicates the physical dimensions and scale of the proposed project, the number of acres of vegetation that will be removed from the site, whether blasting will occur, and the number of jobs which will be generated or eliminated by the project, and "Zoning and Planning Information,” which includes a discussion of whether zoning variances or special use permits will be required, whether the project will generate a significant increase in traffic, and whether community services, such as police and fire protection, are sufficient in their existing capacity, to handle the projected demand (see, 6 NYCRR 617.21, Appendix A, Part 1).
The agency principally responsible for approving the proposal is then required to analyze the information contained in the EIS and assess the potential impact on land, water, plants and animals, growth and character of the community and other environmental concerns (6 NYCRR 617.21, Appendix A, Parts 2, 3). An agency that is empowered to consider only criteria that are unrelated to any environmental or land use concerns clearly would not be aided in its decision by the receipt of this highly technical and environmental-specific information. Furthermore, preparation of an EIS would be a meaningless and futile act, since an agency vested with discretion in only a limited area could not deny a permit on the basis of SEQRA’s broader environmental concerns.
Application of these principles here leads us to conclude *328 that plaintiff Village was not vested with the type of discretion which would enable it to predicate permit issuance on the land use or environmental matters detailed in an EIS. Plaintiff directs our attention to section 4 (c) of the Village Ordinance which provides:
"In the case of an apartment house, a church or place of worship, a school, a place of public assembly or other construction involving special problems or special considerations, the Board of Trustees may retain a special architect or engineer to examine the application and confer with the applicant’s architect and submit his report thereon * ** *. The Building Inspector may act on the basis of such report, and, meanwhile, may suspend action on the application” (emphasis supplied).
Plaintiff claims that the underscored language gives the Inspector greater discretion than that granted to the issuing agency in Pius, and prevents permit issuance from being considered an exempt ministerial act. Plaintiff’s interpretation of the Ordinance requires a leap not warranted by the above-quoted terms.
While the Ordinance arguably does give the Inspector some discretion to consider consultants’ reports before acting on a permit application, no language authorizes the Building Inspector to predicate permit issuance on anything other than an applicant’s compliance with predetermined statutory criteria. Rather, the only reasonable construction of the Ordinance’s terms is that these architectural and engineering reports, which typically would assess compliance with fire, safety and construction regulations, may be used to assist the Inspector in determining whether the proposed construction meets all applicable Building Code requirements. Thus, the authority to consider these reports, albeit discretionary, does not render a determination of the Village an "action” governed by the SEQRA requirements. As a practical matter, it would be unreasonable to hold that an agency responsible for issuing building permits, which is permitted to review architects’ and engineers’ reports, could demand an EIS, which it is not qualified to assess, and which would be of virtually no assistance in determining whether the applicant’s proposal complies with the Building Code.
Inasmuch as we conclude that the Village’s determination on a permit application is not an "action” requiring prepara *329 tion of an EIS under SEQRA or Local Law No. 2 of the Incorporated Village of Atlantic Beach, we need not consider, as the Appellate Division did, whether such a requirement would usurp the Town of Hempstead’s authority to regulate land use under the Nassau County Charter. Since permit issuance under the Village Ordinance constituted a SEQRAexempt action, the courts below properly vacated the preliminary injunction barring further construction and dismissed the Village’s complaint.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa and Smith concur.
Order affirmed, with costs.