[827 NYS2d 322]

In the Matter of RUSSELL ZIEMBA, as President of the HISTORIC ACTION NETWORK, et al., Respondents, v CITY OF TROY et al., Respondents, and GEORGE WESTON BAKERIES, INC., et al., Appellants.

Third Department, December 21, 2006

APPEARANCES OF COUNSEL

*Whiteman, Osterman & Hanna, L.L.P.*, Albany (*Jonathan P. Nye* of counsel), for appellants.

*Stephen F. Downs*, Selkirk, for Russell Ziemba and others, respondents.

## OPINION OF THE COURT

MERCURE, J.

Respondents Freihofer Sales Company and George Weston Bakeries, Inc. (hereinafter collectively referred to as respondents) have owned the Freihofer Bakery Building and the Riverside Club in the City of Troy, Rensselaer County, for approximately 70 years. The buildings have been unoccupied since 1999 and, following several failed attempts to sell the property, respondents contracted to demolish the buildings. After respondents commenced asbestos abatement work in contemplation of demolition, petitioner Historic Action Network requested that respondents donate the buildings for public use. Although several public organizations and officials toured the site, no interest in developing the buildings was expressed and plans for demolition therefore continued.

In August 2004, respondents submitted an application for a demolition permit. Respondent City of Troy Planning Board determined that it did not have jurisdiction to conduct a State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) review of an application for a demolition permit and referred the matter to the Code Enforcement Office. In May 2005, the Code Enforcement Office posted notice of the proposed demolition and a scheduled review of respondents' demolition site plan. No comments were received and respondents were issued a demolition permit on May 26, 2005, which would expire on July 25, 2005.

Petitioners then commenced this combined CPLR article 78 proceeding and action, seeking, among other things, an order enjoining demolition and a declaratory judgment that respondent City of Troy was required to conduct SEQRA review of all demolition applications prior to issuing a permit. Supreme Court denied respondents' motion to dismiss the petition, granted petitioner Stephen Comer's motion to intervene, vacated the demolition permit and enjoined demolition of the buildings pending the completion of SEQRA review (10 Misc 3d 581 [2005]). Respondents appeal and we now reverse.

■ Initially, we reject respondents' argument that petitioners lacked standing to commence this proceeding. To estab-

lish standing to challenge a governmental action, a petitioner must demonstrate an injury-in-fact—i.e., actual harm—and that the injury "falls within the 'zone of interests,' or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772-773 [1991]; *see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]). Moreover, in the context of land use matters, it is "incumbent upon the party challenging . . . an administrative determination to 'show that it would suffer direct harm, injury that is in some way different from that of the public at large' " (*Matter of Gallahan v Planning Bd. of City of Ithaca*, 307 AD2d 684, 685 [2003], *lv denied* 1 NY3d 501 [2003], quoting *Society of Plastics Indus. v County of Suffolk, supra* at 774; *see Matter of Center Sq. Assn., Inc. v City of Albany Bd. of Zoning Appeals*, 9 AD3d 651, 652 [2004]). Thus, while " 'an allegation of close proximity alone may give rise to an inference of damage or injury that enables a nearby owner to challenge a zoning board decision without proof of actual injury,' " the neighbor must nevertheless demonstrate that it "is close enough to suffer some harm other than that experienced by the public generally" and that the harm is within the zone of interests to be protected by the statute (*Matter of Oates v Village of Watkins Glen*, 290 AD2d 758, 761 [2002], quoting *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 414 [1987]; *see Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d 428, 433 [1990]).

In that regard, we note that SEQRA has, as one of its "overriding principles and objectives, the 'maintenance of a quality environment for the people of this state' " (*Society of Plastics Indus. v County of Suffolk, supra* at 777, quoting ECL 8-0103 [1]). The statute defines "[e]nvironment" as "the physical conditions which will be affected by a proposed action, including . . . objects of historic or aesthetic significance . . . and existing community or neighborhood character" (ECL 8-0105 [6]). Here, the individually-named petitioners live within two blocks of the proposed demolition and can see the historic buildings from their homes. Inasmuch as we have recognized standing based upon an allegation that a petitioner resides in the immediate vicinity of a project that will affect the petitioner's scenic view, we agree with Supreme Court that the individual petitioners established standing

(*see Matter of Steele v Town of Salem Planning Bd.*, 200 AD2d 870, 872 [1994], *lv denied* 83 NY2d 757 [1994]; *see also Matter of McGrath v Town Bd. of Town of N. Greenbush*, 254 AD2d 614, 616 [1998], *lv denied* 93 NY2d 803 [1999]; *cf. Matter of Gallahan v Planning Bd. of City of Ithaca, supra* at 685; *Matter of Save Our Main St. Bldgs. v Greene County Legislature*, 293 AD2d 907, 908-909 [2002], *lv denied* 98 NY2d 609 [2002]). Further, the individual petitioners are members of the Historic Action Network, which states that its purpose is the preservation of historical structures located in the City of Troy. Because one or more of its members would have standing individually to sue, the interests asserted herein are germane to its purpose and the participation of the individual members is not required (*see Society of Plastics Indus. v County of Suffolk, supra* at 775), the Historic Action Network also has established organizational standing to sue.[1]

Similarly, we conclude that Supreme Court properly granted Comer's motion to intervene and correctly determined that Comer has standing. In the context of a CPLR article 78 proceeding, a court may permit "interested persons to intervene" (CPLR 7802 [d]). Here, Comer demonstrated that he is the sole remaining member of the federally-recognized Stockbridge-Munsee Band of Mohican Indians residing within the tribe's former aboriginal territory, which includes the City of Troy. He asserts that Native American burial grounds are located beneath respondents' buildings and may be disturbed when the buildings are demolished. In our view, Comer established a harm that is within the zone of interests of the statute and different from that suffered by the public at large (*see generally Society of Plastics Indus. v County of Suffolk, supra* at 773), as well as his interest in this proceeding.

■ We agree with respondents, however, that this matter is not moot despite the expiration of the demolition permit on July 25, 2005 and the amendment of the Troy City Code purportedly to clarify that the granting of demolition permits is

1. Petitioners concede that Supreme Court improperly gave collateral estoppel effect to a determination in a prior proceeding (*Matter of Ziemba v City of Troy*, 295 AD2d 693 [2002]) that some of the petitioners herein had standing to challenge a negative declaration under SEQRA issued by the City of Troy Planning Commission regarding a proposal to replace the buildings with a drug store. The specific concerns raised in the prior proceeding differ from those at issue here and, thus, collateral estoppel is inapplicable because there is not identity of issue (*see Bansbach v Zinn*, 1 NY3d 1, 10-11 [2003]).

discretionary (*see* Troy City Code § 141-28 [A]) and, thus, subject to SEQRA review.[2] Specifically, section 141-28 (A) now requires that prior to applying for a new demolition permit, the applicant must seek the approval of the City Planning Board. Here, however, a demolition permit was applied for and issued before that requirement was in place. The permit was stayed by order of Supreme Court dated May 26, 2005, thereby preventing respondents from taking any action pursuant to the permit pending resolution of this litigation. Because the expiration of the deadline occurred solely as a result of the court-ordered stay and we agree with respondents that the petition should be dismissed, as explained below, respondents are entitled to a 60-day extension of the demolition permit deadline and are not required to seek a new permit from the City Planning Board (*see* Troy City Code § 141-7 [D]; *Matter of Center Sq. Assn., Inc. v City of Albany Bd. of Zoning Appeals*, 19 AD3d 968, 971-972 [2005]; *see generally Matter of American Red Cross v Board of Zoning Appeals of City of Ithaca*, 161 AD2d 878, 879 [1990]; *Rathkopf v Remsen St. Co.*, 18 AD2d 923, 924 [1963]).

■ Turning to the merits, we further agree with respondents that Supreme Court erred in determining that the issuance of a demolition permit under the Troy City Code is subject to SEQRA review. SEQRA requires the preparation of an environmental impact statement (hereinafter EIS) ''on any *action* . . . which may have a significant effect on the environment'' (ECL 8-0109 [2] [emphasis added]). While the issuance of a permit may constitute an ''action'' within the purview of the statute (*see* ECL 8-0105 [4]), SEQRA provides an express exemption from its application for ''official acts of a ministerial nature, involving no exercise of discretion'' (ECL 8-0105 [5] [ii]; 6 NYCRR 617.5 [c] [19]). It is well settled that the determination of whether a particular action is ministerial depends on the underlying regulation or municipal code authorizing the action (*see Incorporated Vil. of Atl. Beach v Gavalas*, 81 NY2d 322, 325 [1993]; *Matter of Pius v Bletsch*, 70 NY2d 920, 922 [1987]). The pivotal inquiry does not turn on a mechanical distinction between ministerial and discretionary acts, however, but requires us to consider whether

---

**2.** In asserting that this matter is moot, petitioners contend that the permit is invalid because it was not properly signed by Code Enforcement Office staff and the issuing date is prior to the scheduled public hearing. Inasmuch as the record contains no indication that petitioners advanced this argument before Supreme Court or the Code Enforcement Office as a ground for invalidating the permit, their argument is unpreserved.

the underlying regulatory scheme invests the authorizing agency with discretion to act or refuse to act based on the type of information contained in an EIS (*see Incorporated Vil. of Atl. Beach v Gavalas, supra* at 326; *Matter of Filmways Communications of Syracuse v Douglas,* 106 AD2d 185, 187 [1985], *affd on op below* 65 NY2d 878 [1985]; *see also Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn.,* 306 AD2d 113, 114 [2003], *appeal dismissed* 2 NY3d 727 [2004]). Thus, "when an agency has some discretion, but that discretion is circumscribed by a narrow set of criteria which do not bear any relationship to the environmental concerns that may be raised in an EIS, its decisions will not be considered 'actions' for purposes of SEQRA's EIS requirements" (*Incorporated Vil. of Atl. Beach v Gavalas, supra* at 326).

The issuance of the demolition permit at issue here is governed by Troy City Code §§ 141-28 and 141-29. If the applicant provides proof of County Health Department approval of a pest inspection, has erected an approved system of barricades, disconnected all utilities, plugged the sewer lateral, and an after-demolition plan has been approved pursuant to section 141-29, a demolition permit will be issued (*see* Troy City Code former § 141-28 [A]). An after-demolition plan is required when, as herein, there are no immediate plans for construction on the site requiring site plan approval (*see* Troy City Code § 141-29 [B], [C]). In recognition of the fact that "[d]emolishing structure(s) on a lot oftentimes substantially changes the character of the lot . . . [and can] adversely affect[ ] the property of adjoining owners or the surrounding neighborhood" (Troy City Code § 141-29 [A]), the demolition plan must "address such issues as controlling erosion and drainage from the lot, presenting a reasonable appearance for the lot, discouraging illegal dumping and parking on the lot, and the like" (Troy City Code § 141-29 [C]). Respondent Director of the Bureau of Code Enforcement (hereinafter Director) must provide notice to surrounding property owners to give such owners the "opportunity to identify problems that they think will arise because the structure(s) will no longer exist on the lot" (Troy City Code § 141-29 [E]). The Director must also review the plan to determine whether it "identifies and mitigates any adverse effects [that] the site, as it would exist after the demolition, would have on the adjoining

property owners and surrounding neighborhood" and may require the applicant to modify the demolition plan prior to granting a demolition permit (Troy City Code § 141-29 [D]).

Although the Troy City Code expressly provides the Director with discretion in determining whether the demolition plan ensures the safety and protection of the area surrounding the property such that the issuance of a permit is warranted, the issuance of the permit nonetheless remains predicated on "an applicant's compliance with predetermined statutory criteria" (*Incorporated Vil. of Atl. Beach v Gavalas, supra* at 328). These statutory criteria address conventional safety concerns—the physical condition and appearance of the property after the demolition, as well as the prevention of illegal activities (*see id.* at 326). They do not relate to the types of information contained in an EIS regarding the potential impact of a proposed action on "land, water, plants and animals, growth and character of the community and other environmental concerns" (*id.* at 327). Indeed, we note that there is no indication in the Troy City Code that the Director could consider the types of interests that petitioners assert would be relevant in a SEQRA review here—the archeological and historical significance of the property and buildings in question and the existing historic character of the neighborhood. In that regard, "preparation of an EIS would be a meaningless and futile act," because the Director is "vested with discretion in only a limited area [and] could not deny a permit on the basis of SEQRA's broader environmental concerns" (*id.* at 327). Inasmuch as the discretion conveyed by the Troy City Code is limited to a narrow set of criteria that is unrelated to the environmental concerns that would be raised in an EIS, the issuance of the demolition permit was ministerial for SEQRA purposes and reversal is required here (*see id.* at 327-328; *Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., supra* at 114; *Matter of Lighthouse Hill Civic Assn. v City of New York*, 275 AD2d 322, 323 [2000], *lv denied* 95 NY2d 768 [2000]; *Matter of Steele v Town of Salem Planning Bd.*, 200 AD2d 870, 872-873 [1994], *supra*).

The remaining arguments of the parties, to the extent they have not been addressed herein, are either unpreserved or, upon consideration, have been found to be lacking in merit.

CARDONA, P.J., SPAIN, CARPINELLO and MUGGLIN, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, motion of respondents George Weston Bakeries, Inc. and Freihofer Sales Company granted, 60-day permit reinstated, petition dismissed as to said respondents and preliminary injunction vacated.