OPINION OF THE COURT
Rory J. Bellantoni, J.
This matter arises from a challenge to Westchester County’s action for opening a drop-in homeless shelter at 85 Court Street, White Plains, New York. Petitioner, White Plains Downtown District Management Association, Inc., also known as White Plains Business Improvement District, alleges that Westchester County violated the State Environmental Quality Review Act (hereinafter SEQRA) because respondents failed to conduct an environmental study prior to opening the drop-in center in downtown White Plains.
Petitioner has commenced this proceeding pursuant to article 78 of the CPLR seeking an order of this court declaring that respondents (1) acted in excess of their jurisdiction, (2) made a determination in violation of lawful procedure, (3) made a determination in an arbitrary and capricious manner, (4) illegally authorized the opening of a homeless shelter, and (5) violated petitioner’s rights pursuant to 42 USC § 1983. Petitioner seeks an order requiring respondents to comply with SEQRA and New York State and local building, fire, plumbing, fuel gas, property maintenance and/or energy codes.
Respondents have filed a motion to dismiss, arguing that (a) petitioner lacks standing to maintain the instant proceeding, (b) the petition fails to state a cause of action and is jurisdictionally defective, and (c) petitioner is not entitled to damages and attorney’s fees in this matter.
In the instant case, petitioner, the White Plains Downtown District Management Association, Inc., is a not-for-profit corporation that is also known as the White Plains Business Improvement District (hereinafter BID). BID is an association of approximately 1,100 members. Every business located in downtown White Plains is a constituent and member of BID; members also include residences, government agencies and other entities located in downtown White Plains! (Rick Ammirato affidavit, exhibit A.) The purpose of BID is to “plan and finance services and improvements to promote business activity and to help revitalize the downtown and to maintain *735 and enhance the economic viability of the White Plains shopping district.” (Mem of law in opposition to respondents’ motion to dismiss the verified petition at 32, citing <http://www.whiteplainsdowntown.com>.)
Prior to January 2006, Westchester County operated a homeless shelter and a drop-in center at the Westchester County Airport. The drop-in center was designated for individuals who either refused public assistance or services or were ineligible for these services. These individuals do not live at the drop-in center; rather, they were picked up and dropped off at a location in the city of White Plains. Westchester County no longer provides these services at that location.
Since the drop-in center ceased its operation at the Westchester County Airport location, on or about January 10, 2006, Westchester County began busing homeless individuals to 85 Court Street in White Plains.[1] The 85 Court Street location is being operated as a drop-in center. The homeless individuals that spend the night at the drop-in center come from various locations in Westchester county and are picked up and are dropped off in the city of White Plains.
On May 10, 2006, BID commenced the instant article 78 petition challenging Westchester County’s actions regarding the drop-in center, alleging that Westchester County failed to conduct an environmental study prior to opening the drop-in center in violation of SEQRA. Respondents have filed the instant motion to dismiss alleging, inter alia, that BID lacks standing to bring the instant application. A conference was held with attorneys for the parties on September 28, 2006.
The subject of standing in the context of article 78 proceedings involving SEQRA challenges has become a troublesome one for the courts, especially in the area of “associational” standing. With the growth of knowledge and awareness to preserve our environment, the growth of litigation to enforce public values, such as protection of the environment, has also grown. Whether or not a person, or in this case an association, seeking relief has legal standing to in fact request such relief, when challenged, is an issue that must be considered at the outset of any litigation. (Society of Plastics Indus, v County of Suffolk, 77 NY2d 761 [1991].) The burden of establishing standing to challenge a *736 violation under SEQRA is on the party seeking judicial review. (Id.) The same principles of standing apply whether the party seeking relief is one person or, as in the present case, an association of persons. (Id. at 775.)
For an association or organization to have standing to challenge a SEQRA violation, the association must meet three requirements:
“First, if an association or organization is the petitioner, the key determination to be made is whether one or more of its members would have standing to sue; standing cannot be achieved merely by multiplying the persons a group purports to represent. Second, an association must demonstrate that the interests it asserts are germane to its purposes so as to satisfy the court that it is an appropriate representative of those interests. Third, it must be evident that neither the asserted claim nor the appropriate relief requires the participation of the individual members. These requirements ensure that the requisite injury is established and that the organization is the proper party to seek redress for that injury.” (Id.)
SEQRA does not contain a provision regarding judicial review. The Court in Society of Plastics (supra) noted that while the Legislature abandoned an automatic standing concept, associational standing was not eliminated nor restricted, but rather, the same principles of standing for one person were extended to an association of persons.
In the case at bar, BID has filed the instant article 78 proceeding on behalf of its members challenging the action of the County Executive and the County of Westchester of opening a drop-in shelter at 85 Court Street. BID argues that such action by the County Executive and the County constitutes a violation of SEQRA in that respondents failed to conduct a study as to what, if any, environmental impact the relocation of the drop-in center would have on downtown White Plains.
Respondents argue that BID lacks standing to bring the present article 78 proceeding, claiming that BID is unable to meet the requirements set forth in Society of Plastics (supra). For the reasons set forth below, the court finds that BID does have standing to bring the instant application.
Standing
Respondents maintain that in order to successfully assert standing to challenge the location of the drop-in center, BID *737 must establish that one or more of its members has actually been injured by the placement of homeless individuals found in the White Plains drop-in center. Respondents argue that BID is a special interest group with merely generalized and speculative concerns attempting to “interfere with a governmental operation it deems unappealing.” (Respondents’ mem of law in support of motion to dismiss at 6.) Respondents further argue that BID has proffered no specific allegations of actual loss of business or actual victimization of one of its members by any of the individuals housed at the drop-in center.
BID asserts that several of its members are in close proximity to the drop-in center — 2 of its members are approximately within 50 feet of the location; 18 other members are approximately 200 feet from the location; 24 members are 300 feet away from the location; 38 members are approximately 500 feet away from the location; and 106 BID members are approximately 1,000 feet away from the drop-in center. (Rick Ammirato’s affidavit, at 3, 1Í10.) BID asserts that the proximity of the drop-in center to its members harms them in a manner not experienced by the public in general. Members have experienced homeless individuals sleeping in front of or around their businesses; their sidewalks and/or properties being used as “bathrooms”; and their customers are being harassed, scared and/or intimidated. (Rick Ammirato’s affidavit, at 5-6, 1118.) Furthermore, BID asserts there are homeless criminals and/or level three sex offenders that are frequently housed at the drop-in center without any monitoring or supervision, thus presenting further safety concerns to BID members. (Individuals designated as level three sex offenders have been deemed by a court to be the highest risk to reoffend while in the community.) (See generally, Rick Ammirato’s affidavit, exhibit B.) Moreover, BID claims that the location of the drop-in center has affected members’ property values. (Mem of law in opposition to respondents’ motion to dismiss the verified petition at 39.)
The existence of an injury-in-fact — an actual legal stake in the matter being adjudicated — ensures that the party seeking review has some concrete interest in the action. (Society of Plastics, supra at 772.) However, while a petitioner must demonstrate an injury-in-fact and that the injury falls within the zone of interests sought to be protected, when the premises that are the subject of an administrative agency’s action are a party’s property or are in close proximity to a party’s property, that party may be presumed to be adversely affected by a SEQRA *738 violation and need not allege a specific harm. (Matter of Stephens v Gordon, 202 AD2d 437 [2d Dept 1994].) An allegation of close proximity alone may give rise to an inference of damage or injury that would enable the property owner to challenge a determination without proof of actual injury. (See, Matter of Ziemba v City of Troy, 37 AD3d 68 [3d Dept 2006].) However, such individual must demonstrate that its close proximity is sufficient to indicate that the property owner has experienced some harm other than that experienced by the public at large and is within the zone of interests. (Id.; Zupa v Paradise Point Assn., Inc., 22 AD3d 843 [2d Dept 2005].) In Matter of Ziemba, while distinguishable from the instant case in that there were two individually named petitioners, it nevertheless is similar in that the individual petitioners named therein lived within two blocks from the property which was the subject of the article 78/ SEQRA action. The Ziemba court noted that the individual petitioners therein were also members of the Historic Action Network and thus found that “[b]ecause one or more of [the Historic Action Network’s] members would have standing individually to sue, the interests asserted herein are germane to its purpose and the participation of the individual members is not required, the Historic Action Network also has established organizational standing to sue.” (Id. at 72 [citations omitted].)
In the instant case, BID has demonstrated that one or more of its members are in close proximity to the drop-in center; such proximity raises a presumption that a harm has been suffered by its members. (See, Matter of Center Sq. Assn., Inc. v City of Albany Bd. of Zoning Appeals, 9 AD3d 651 [3d Dept 2004].) Respondents’ claims that BID has not asserted an individual harm or other harm suffered by an individual member other than a generalized economic harm are without merit. Respondents further claim that “petitioner’s allegations regarding potential loss of business are not environmental, and do not implicate the character of the community, which is entirely unchanged.” (Mem of law in support of motion to dismiss at 8.) However, the court rejects respondents’ claims and restrictive interpretation of the cases cited.
The case at bar is distinguishable from those cited by respondents. BID is challenging an agency action: Westchester County’s action of opening a drop-in center in downtown White Plains. Agency actions are defined as “projects or physical activities, such as construction or other activities that may affect the *739 environment by changing the use, appearance or condition of any natural resource or structure.” (6 NYCRR 617.2 [b] [1].)
Clearly, BID is challenging the change in use of a building or structure that may affect the environment of the downtown area of the city of White Plains. Respondents attempt to minimize the County’s action and the impact it may have on the environment; 85 Court Street was exclusively an office building and now houses, in a basement conference room, homeless individuals who refuse or are ineligible for services. Under SE-QRA, environment is defined as “the physical conditions that will be affected by a proposed action, including land, air, water, minerals, flora, fauna, noise, resources of agricultural, archeological, historic or aesthetic significance, existing patterns of population concentration, distribution or growth, existing community or neighborhood character, and human health.” (6 NYCRR 617.2 [Z].)
Based upon the plain language of the statutory definition of environment, it is clear that BID has asserted various noneconomic harms (safety, cleanliness and the character of the downtown area) suffered by its members, individually, which are distinct harms suffered from those experienced by the public in general. While BID acknowledges that it seeks to represent and preserve the economic interests of its members, it also represents other noneconomic interests. The court reviewed a list of BID members provided as an exhibit; in addition to businesses, BID’s membership includes residences, government agencies and not-for-profit organizations. Thus, BID’s membership is not purely composed of businesses as suggested by respondents. Furthermore, it is interesting to note that BID works in partnership with several city agencies to address issues of safety, cleanliness and quality of life. Some of the programs and services sponsored and funded by BID include: Clean Sweeps Program (funding provided for cleaning sidewalks and trash removal); Planter Program (seasonal planting to beautify the area); a scholarship program; and coplanning and coproducing community events such as parades, New Year’s Eve festivities and sidewalk sales, to name a few.[2] These programs demonstrate that BID’s purpose goes beyond protecting the economic interests of its members and includes preservation and *740 enhancement of the downtown environment as defined under SEQRA. BID has a diverse membership with diverse interests which come together as a collective to protect not only their common interests but their individual interests as well. The fact that most of BID’s members are businesses does not mean that its sole purpose is economically driven. BID exists to protect all of its members’ individual interests, even if the interests and/or benefits gained are different for each member. It is clear to the court that BID has asserted that the introduction of a drop-in center in downtown White Plains may have an environmental impact — that is, an impact affecting existing patterns of population concentration, distribution or growth, existing community or neighborhood character, and human health — which would affect its members.
The crux of the relief sought by BID is that Westchester County conduct an environmental study pursuant to SEQRA to determine the impact, if any, that the drop-in center will have on the environment of downtown White Plains. The interests BID seeks to protect — existing patterns of population concentration, distribution or growth, existing community or neighborhood character, human health and economic interests — are germane to its purpose and the participation of the individual members is not required.
Since individual members of BID would clearly have standing to sue, the court finds that BID, as an association, has standing to bring this action. While courts have limited associational standing, it has not been condemned altogether; indeed, if this court were to hold BID lacked associational standing under the facts of the case at bar, it is hard to imagine how any association could ever be said to have standing to bring such an action.
Claims under 42 USC § 1983
Petitioner claims that the presence of the drop-in shelter denies BID and its members certain constitutional rights, arguing that they have suffered deprivation of their property rights and substantive due process rights, including imminent threat to their health and safety caused by the location of the drop-in center. (Petitioner’s verified petition and complaint at 25, 11 99.) BID claims that the location presents an unreasonable risk of harm to BID members, denying them their Fourteenth Amendment interest to be reasonably protected from harm to their life and liberty. (Id. H 100.) As a result, BID claims that respondents are liable for “an amount not less than $100,000, plus the costs and expenses of this action, including attorney’s fees.”
*741 Respondents seek to dismiss petitioner’s claims arguing that BID has failed to identify a particular liberty or property interest that would support a cause of action under 42 USC § 1983.
In Irish Lesbian & Gay Org. v Giuliani (143 F3d 638 [2d Cir 1998]), the court held that when an organization seeks compensatory damages on behalf of its members, such an action requires individual participation of its members for the relief sought pursuant to 42 USC § 1983. It also opined that organizations may bring an action to seek damages for deprivation of constitutional rights; the harm suffered is common to its entire membership and shared by everyone to an equal degree. (Id. at 650.)
Upon review of the allegations submitted by petitioner, the court finds that BID lacks standing to bring an action under 42 USC § 1983. The court accepts respondents’ argument in that the petition merely makes generalized assertions that BID members have been deprived of their “Fourteenth Amendment interest to be reasonably protected from harm to their life and liberty.” (Petitioner’s verified petition and complaint at 25, 11100.) The court notes that while BID did state that property values have decreased, such is an individualized harm, such that individual member participation would be required to obtain compensatory damages under 42 USC § 1983. (See, Irish Lesbian & Gay Org. v Giuliani, supra.) Furthermore, the petition fails to assert that BID, as an association, has suffered any deprivation of its constitutional rights.
Accordingly, the court denies and dismisses petitioner’s claims under 42 USC § 1983 as BID lacks standing to pursue such an action.
Code Violations
Petitioner claims that the drop-in center is operating in violation of several building codes. BID claims that there are too many beds, in excess of those permitted by the building code, and that the drop-in center fails to comply with plumbing and fire codes. As such, BID requests that respondents be ordered to relocate the drop-in center to another location that complies with the applicable codes. Petitioner offers no authority in support of its position. While the court may have found that BID has standing to proceed with its article 78/SEQRA action, the court finds that BID has no standing to seek enforcement and compliance with building codes at the drop-in center.
*742 Jurisdiction
Respondents request that the complaint be dismissed for lack of subject matter jurisdiction. Specifically, respondents argue that petitioner filed both a petition and complaint in an attempt to commence an action and a special proceeding under one index number. Respondents argue that the matter was improperly commenced as no summons was issued. Respondents admit that they were served with a notice of petition and a petition.
Petitioner argues that all matters before the court were properly commenced.
CPLR 7804 states that article 78 proceedings are special proceedings which are to be commenced with the filing of a notice of petition and a verified petition. Petitioner has filed a notice of petition and a verified petition.
To the extent that respondents seek dismissal of the complaint because petitioner attempted to commence an action or seek relief beyond that allowed by CPLR 7801 et seq., such request is moot. The court has found that BID lacks standing to proceed under 42 USC § 1983; thus, the only surviving proceeding is the article 78 application, which has been properly commenced.

. This building is a Westchester County owned building previously utilized, solely, as an office building; social services offices still occupy space therein.

. In its memorandum of law in opposition to respondents’ motion to dismiss, BID included a reference to its Web site. The court will treat such reference as if it were an exhibit, recognizing that the Internet is fast becoming an integral part of judicial proceedings and repository of information.