■ In the Matter of SAVE THE PINE BUSH, INC., et al., Appellants, v PLANNING BOARD OF THE CITY OF ALBANY et al., Respondents. [749 NYS2d 318] —Lahtinen, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered March 11, 2002 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Planning Board of the City of Albany approving a site plan for the construction of a senior residential housing complex.

In the mid-1990s, respondent Roman Catholic Diocese of Albany (hereinafter the Diocese) began exploring the feasibility of constructing a senior citizen residential housing complex on a portion of a 30-acre parcel it owns in the City of Albany. A southwest section of the parcel bordered the Albany Pine Bush Preserve (hereinafter Preserve) and, thus, the Diocese engaged in discussions with the Albany Pine Bush Preserve Commission (hereinafter Commission) regarding the project. The Commission recommended that the southern 13 acres of the parcel not be developed since such property was part of an area the Commission envisioned as a proposed migration corridor to link isolated populations of the endangered Karner Blue Butterfly to the Preserve. The Diocese scaled back its project to protect 8.6 acres on the south side of the parcel and then, in December 2000, applied to respondent Planning Board of the City of Albany (hereinafter the Board) for site plan approval.

Pursuant to the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), the Board assumed lead agency status, determined that the project was a type I action, issued a positive declaration of significant environmental impact and directed the Diocese to prepare an environmental impact statement. The Diocese prepared a draft environmental impact statement, including studies reporting that there are no Karner Blue Butterflies on the project site and that the site does not contain blue lupine, a plant critical to the life cycle of this butterfly. Following a public hearing and public comment period, and the Diocese's responses to those comments, the Board accepted the final environmental impact statement as complete. The Board thereafter adopted a SEQRA findings statement and approved a modified site plan, requiring that the Diocese protect 10.8 acres in the southern portion of the site, that the Diocese remove existing trees and shrub species in such portion and plant native Pine Bush species needed to sustain the Karner Blue Butterfly and that the Diocese permit the Commission to manage the 10.8 acres. Petitioners commenced the current CPLR article 78 proceeding to annul the Board's site plan approval, contending, inter alia, that the Board violated SEQRA requirements by failing to take a "hard look" at certain of the project's impacts. Supreme Court dismissed the petition and this appeal ensued.

Judicial analysis of an agency's SEQRA determination is "limited to reviewing whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 688; *see Matter of Kahn v Pasnik*, 90 NY2d 569, 574). The pertinent inquiry is "whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417; *see Matter of Gernatt Asphalt Prods. v Town of Sardinia, supra* at 688). "An agency's compliance with its substantive SEQRA obligations is governed by a rule of reason and the extent to which particular environmental factors are to be considered varies in accordance with the circumstances and nature of particular proposals" (*Akpan v Koch*, 75 NY2d 561, 570 [citation omitted]). A court cannot substitute its judgment for that of the agency (*see Matter of Merson v McNally*, 90 NY2d 742, 752).

Petitioners contend that the Board erred in requiring the Diocese to set aside 10.8 acres for management by the

Commission rather than the 13 acres recommended by the Commission. In support of such contention, petitioners argue, inter alia, that the Commission is a statutorily created entity charged with, among other things, managing the Preserve (*see* ECL art 46) and, thus, its recommendations should have been afforded the same broad deference generally applicable to determinations by administrative agencies. The Commission, which is not a party to this CPLR article 78 proceeding, provides essentially an advisory and educational role regarding land *adjacent* to the Preserve (*see* ECL 46-0109 [15], [16]; *see also* ECL 46-0107 [5]). Hence, the Board was not required to give the high level of deference to the Commission that is afforded to certain determinations of state agencies when such agencies exercise their power and address issues in their areas of expertise.

Moreover, the record reflects that the Board gave significant consideration to the Commission's recommendations and took a hard look at the issues implicated thereby in its deliberations. The Board acknowledged the importance of the property as a future butterfly migration corridor and, accordingly, required the Diocese to increase the acres set aside to 10.8. Additionally, although the butterfly is not currently located on the subject parcel, the Diocese was directed to clear and revegetate the area with native Pine Bush species in order to facilitate the Commission's goal of establishing a migration corridor.

The Board further addressed the ability of the Commission to establish a minimum of 2,000 acres of fire-manageable preserve (*see Matter of Save the Pine Bush v Common Council of City of Albany*, 188 AD2d 969, 970-971). While the Commission's Pine Bush Management Plan concluded that 1,850 acres of the currently protected 2,700 acres are fire-manageable, the Diocese's consultant opined that 2,061 acres are fire-manageable. The Board considered the various expert opinions regarding the current size of the Preserve and concluded that setting aside 10.8 acres for a migration corridor furthered the goal of 2,000 fire-manageable acres. The Board also considered the cumulative impact of other proposed projects in the area on the ability of the Commission to meet the Preserve's acreage goal. We find that the Board took the required "hard look" at the achievement of 2,000 fire-manageable acres and made a reasoned elaboration of its determination.

Petitioners' assertion that the Board's approval of the project constituted a "taking" of the Karner Blue Butterfly in violation of the State and Federal Endangered Species Acts is meritless, since it is undisputed that there are not now any Karner Blue

Butterflies on the Diocese's parcel and the vegetation currently on the parcel cannot support the migration of the butterflies (*cf. State of New York v Sour Mtn. Realty*, 276 AD2d 8 [taking found when *existing* migratory patterns disrupted]).

The remaining arguments have been considered and found unpersuasive.

Mercure, J.P., Crew III, Spain and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.