OPINION OF THE COURT
Thomas D. Nolañ, Jr., J.
In this combined CPLR article 78 proceeding/declaratory judgment action, petitioners/plaintiffs, Saratoga Lake Protection and Improvement District (SLPID), Saratoga Lake Association, Inc. (SLA), the Town of Saratoga, and the Town of Stillwater (hereinafter collectively referred to as petitioners), challenge an October 18, 2005 resolution by respondent/defendant City Council of the City of Saratoga Springs accepting as complete a final environmental impact statement (FEIS) concerning the development of Saratoga Lake as a public water source for the City of Saratoga Springs. In their challenge to the sufficiency of the environmental review upon which the City’s determination was based, petitioners argue that the City failed to comply with the procedural and substantive requirements of the State Environmental Quality Review Act (SEQRA). In the CPLR article 78 portion of the lawsuit, the crux of petitioners’ chai *782 lenge is that the City, in its FEIS, failed to address and consider all the relevant areas of environmental concern and failed to take the requisite “hard look” at the areas of environmental concern that it did identify. In the declaratory judgment portion of the lawsuit, SLPID alleges that the City improperly refused to recognize it as an “involved agency” pursuant to SEQRA and seeks to have this court make a declaration that it is an “involved agency.” Petitioners also plead claims for declaratory and injunctive relief, as well as for monetary damages, under ECL 15-0701.
On this motion, the merits of the SEQRA challenge are not in issue; rather, before the court is the question whether these petitioners have the right to make such a challenge at all. They do, for the reasons that follow.
Respondents/defendants (hereinafter collectively referred to as respondents) have made a CPLR 3211 (a) (3) preanswer motion to dismiss SLPID’s claims on the ground that SLPID lacks the legal capacity to sue and to dismiss the SEQRA causes of action on the ground that all the petitioners lack standing to bring it.[1]
On a preanswer motion to dismiss, the allegations of the petitioners’ pleadings and their submissions in opposition to the dismissal motion must be accepted as true and given every favorable inference. (Matter of Graziano v County of Albany, 3 NY3d 475 [2004].) Whether the petitioners will be able to produce evidence sufficient to prove those allegations in the future is simply not part of the equation now. (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11 [2005].)
SLPID’s Capacity to Sue
Capacity to sue concerns a “litigant’s power to appear and bring its grievance before the court.” (Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994].) *783 Governmental agencies, such as SLPID, do not have any inherent or common-law right to sue. (Id.) Rather, a governmental agency’s capacity to sue flows either explicitly from its enabling legislation or by necessary implication from the powers and responsibilities conferred upon the agency in such legislation. (Id.) With respect to implied capacity, the Court of Appeals has instructed that, in the absence of a clear legislative intent to the contrary, capacity may be inferred when the agency has “functional responsibility within the zone of interest to be protected.” (Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 445 [1983].)
The respondents’ challenge to SLPID’s capacity to sue has two prongs: (1) no specific authority to sue is granted in the enabling legislation, and (2) the requirements for finding capacity by implication are lacking because respondents contend SLPID’s functional responsibilities are focused on property issues, e.g., managing its property, controlling weeds, levying taxes and adopting restrictions applicable to district property, none of which will be affected by the proposed water project. The respondents’ analysis is too narrowly focused.
SLPID is a political subdivision of the State of New York and a unit of local government. Authorized in 1986 by an act of the New York State Legislature and created by referendum, its geographic jurisdiction includes Saratoga Lake itself, as well as surrounding lands located in the City of Saratoga Springs, the Town of Malta, Town of Saratoga and Town of Stillwater. (L 1986, ch 460.) In authorizing its creation, the Legislature found it would be in the public interest to “form a unit of local government which can supervise, manage and control the . . . lake” to “ensure-the preservation of real property values . . . improve the water quality . . . thereby enhancing the opportunities for public water-related recreational activities . . . [and] conserve the fish and wildlife of the lake, while also enhancing the scenic beauty of the [surrounding municipalities].” (L 1986, ch 460, § 1.) The memorandum in support of the legislation clearly manifests the legislative intent to create an entity that could foster the development of a unified management policy for Sara-toga Lake — something deemed necessary because it does not lie wholly within the jurisdictional limits of any one municipality. That memorandum provides, in part, as follows:
“The Town Boards of Malta, Stillwater and Sara-toga and the City council of Saratoga Springs, have petitioned the Legislature to introduce enabling *784 legislation to permit a special improvement district to be formed. The petition grows out of a desire by residents of the Saratoga Lake to have better control over activities of property owners which affect the condition of the lake. With the increase [sic] use of the lake it has suffered deterioration in recent years as a valuabel [sic] environmental, recreational and aesthetic asset. Sound environmental practices have not been followed because the lake straddles three towns, and the City of Saratoga Springs none of which has exclusive jurisdiction over the lake.
“Saratoga Lake property owners and town officials have concluded that the most effective way to supervise, manage and control the lake so as to preserve real property values around the lake and so as to enhance the scenic beauty, fish and wildlife of the lake is to form a special district” (Mem in Support of Assembly Bill 9211-b and Senate Bill 7690-b).[2]
While it is true that SLPID’s enabling legislation contains no express authorization for it to pursue a SEQRA review, SLPID has such capacity by necessary implication. Contrary to respondents’ contentions, the enabling legislation, not only authorizes SLPID to engage in specific acts such as levying taxes, performing aquatic weed control, and managing district property, but also charges it with broader responsibilities to supervise, manage, and control the lake for purposes of preserving property values, improving water quality, enhancing recreational use, conserving fish and wildlife, and enhancing scenic beauty. If these statutory obligations to supervise and manage mean anything, which of course they do, it necessarily includes a “functional responsibility” for overseeing proposed actions affecting the lake’s waters, a functional responsibility *785 well within the zone of interests protected or promoted by SE-QRA.
Nor is there any discernable legislative intent to negate SLPID’s capacity to maintain a SEQRA challenge. On the contrary, the enabling legislation specifically grants SLPID the authority to “[t]ake any and all other actions reasonably necessary and proper to further [its] purposes” (L 1986, ch 460, § 7 [p]), and, as noted above, SLPID’s prime purpose is to supervise and manage the waters of Saratoga Lake. Absent any legislative intent to the contrary, seeking compliance with environmental laws is a “reasonably necessary and proper” part of the responsibilities of SLPID, which is charged with the duty to supervise, manage, and control an environmental asset. In short, SLPID has the legal capacity to maintain this lawsuit.
Petitioners’ Standing to Sue
Again, respondents claim none of the petitioners has standing to bring this SEQRA challenge. Capacity and standing are related but distinct concepts. Capacity concerns a litigant’s power to bring its grievance before a court. Standing involves inquiry into whether that litigant has a “sufficiently cognizable stake in the outcome so as to cast the dispute in a form traditionally capable of judicial resolution.” (Community Bd. 7 of Borough of Manhattan v Schaffer, supra at 155 [internal quotation marks omitted].) The Court of Appeals instructs that standing, in the final analysis, is a matter of policy, not to be applied in a heavy-handed manner, as it is more desirable that disputes be resolved on their merits rather than by “preclusive, restrictive standing rules” which would close the courthouse doors to litigants with something more than an academic, marginal, or feigned interest. (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987].)
In a SEQRA challenge, standing requires that a litigant have: (1) an environmental “[i]njury in fact” as a result of the challenged administrative action, meaning that the challenged action will have an environmentally harmful effect on the litigant which is different in kind or degree from its effect on the community generally, and (2) an injury which falls within the “zone of interests” or concerns sought to be promoted or protected by the statutory provision under which the agency acted. (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 773 [1991].) These requirements apply to both a private party seeking review *786 and a governmental officer or agency seeking review. (Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436 [1983], supra.)
Applying these principles, the court finds that SLPID has established its standing to bring this lawsuit. Applying the injury-in-fact test, the complaint alleges that SLPID is legislatively empowered to control aquatic vegetation and that, at a minimum, the challenged action will have adverse effects on the manner and methods by which it can accomplish that task. While respondents dispute that the project will have any effect on weed control, even the FEIS concedes that it will be necessary for SLPID to avoid the use of herbicides and employ alternate techniques, such as physical or mechanical harvesting, at least within one-quarter mile of the intake pipe. In the face of their own FEIS findings, respondents’ argument that SLPID has no “injury in fact” because it has not shown that the project will hinder it in carrying out its governmental purposes is incongruous, at best.
Furthermore, in determining standing, it is relevant that SLPID was formed for the express purpose of extricating Sara-toga Lake from years of fractured management by supplying what all, including the City, agreed was a much needed, unified voice in matters of lake management. This intent is expressed in SLPID’s enabling legislation, wherein the Legislature found it in the public interest to have “a unit of local government which can supervise, manage and control [Saratoga Lake].” (L 1986, ch 460, § 1 [emphasis added].) Even in the absence of an injury-in-fact, it seems that this legislative directive in and of itself would confer on SLPID the requisite “sufficiently cognizable stake in the outcome” to establish its standing in this case. (Community Bd. 7 of Borough of Manhattan v Schaffer, supra at 155.)
Regarding the towns’ standing, the Third Department has recognized that the presence of adverse effects peculiar to a town’s role as a municipal agency are “injuries” different from that of the public at large and, as such, will support standing in a SEQRA challenge. (Matter of Town of Coeymans v City of Albany, 284 AD2d 830, 833 [3d Dept 2001], lv denied 97 NY2d 602 [2001].) Here, the complaint alleges, among other things, that the project will have adverse effects on the towns’ ability to manage and direct development in the areas of their towns that are within the Saratoga Lake watershed. While respondents emphasize that no changes will presently be required and that *787 management of the watershed will initially be accomplished through a voluntary implementation system, a July 7, 2003 letter from the New York State Department of Environmental Conservation makes clear that the City “does need to commit to implementing a long-term watershed protection plan.” Such a plan necessarily will impact the portions of the towns within the lake’s watershed.
In addition to the injury-in-fact and “zone of interests” requirements, with respect to organizations or associations, such as SLA, a further requirement exists to establish standing. In addition to having a member who meets the two-part test identified above, the interests the organization asserts on behalf of its members must be germane to its purposes, and neither the asserted claim nor the appropriate relief must require participation of the individual members. (Society of Plastics Indus. v County of Suffolk, supra.)
With regard to SLA, one of its members, Wilma Koss, has satisfactorily demonstrated her individual standing due to the combination of her proximity to the proposed project (she lives on Saratoga Lake within 1,000 feet of the proposed water intake pipe and pumping station) and due to her allegations of direct, adverse environmental impacts on the use and enjoyment of her property as a result of the project. In particular, Koss alleges that she will have a direct and unobstructed view of the pumping station and coffer dam from her property and will experience recreational use restrictions because the coffer dam and intake pipe will be placed in an area of Saratoga Lake where she and her family swim, boat and fish and which will be closed during the construction period and then subject to permanent navigational restrictions and swimming prohibitions once the project has been completed. Koss also alleges that there will be siltation of the waters in her area of the lake during dredging and excavation and that construction noise will be audible from her property. While respondents contend that Koss’s averments are speculative, the City’s FEIS concedes that there will be permanent changes in the visual landscape as a result of the project, increased noise (however slight) attendant to pump station operations, and some permanent limitations on recreational use in the area of the intake pipe, including the prohibition of swimming and some boating activities.
Also unpersuasive are respondents’ arguments that Koss’s property is too distant from the project to afford her standing and that the injuries she alleges are no different from those to *788 the public at large. It is true that some of the impacts Koss alleges (e.g., watershed impacts, impacts on lake water levels and impacts on the ability to control nuisance vegetation) are generalized, undifferentiated impacts which will affect all lake users. As a result, alone they would not, under well-established case authority, support standing. (See Society of Plastics Indus. v County of Suffolk, supra; Matter of Schulz v Warren County Bd. of Supervisors, 206 AD2d 672 [3d Dept 1994], lv denied 85 NY2d 805 [1995].) However, Koss also alleges other, more specific and direct impacts, in particular, visual impacts, noise impacts, and recreational use restrictions in the very area where her property is located. It is possible, as respondents urge, that these impacts may be experienced by any recreational user who might venture into this area of the lake. However, given the proximity of the project to Koss’s property and the nature of the impacts she alleges, it is reasonable to conclude that she will experience these impacts to a different degree than the general public will experience.
While the Third Department has taken the position that in cases where no zoning related issue is involved, there is no presumption of standing based upon proximity (Matter of Save Our Main St. Bldgs. v Greene County Legislature, 293 AD2d 907 [3d Dept 2002], lv denied 98 NY2d 609 [2002]), here, it is not solely proximity which gives rise to Koss’s standing, but, rather, the fact that her proximity results in allegations of direct harm which differs in degree, if not also in kind, from that experienced by the public at large. That difference in degree is a basis for standing here. (See Matter of Steele v Town of Salem Planning Bd., 200 AD2d 870 [3d Dept 1994], lv denied 83 NY2d 757 [1994]; Matter of Duke & Benedict v Town of Southeast, 253 AD2d 877 [2d Dept 1998]; see also Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y., 259 AD2d 26 [1st Dept 1999].)
With regard to the remaining elements of organizational standing, it is evident that the interests Koss is asserting are within the zone of interests protected by SEQRA, and respondents do not seriously assert otherwise. Further, the interests SLA is asserting on behalf of Koss are in fact germane to its purposes and participation of the individual members is not required to assert this claim or to afford complete relief. SLA is a not-for-profit corporation organized in 1993. According to its bylaws, its mission is “to promote and enhance the health, safety, sanitation, recreation and environmental quality of Sara- *789 toga Lake and its extensive watershed.” In this suit, SLA is seeking to protect its members’ recreational interests, as well as the aesthetic integrity and environmental quality of Saratoga Lake. In short, it is pursuing the very purposes for which it was formed.
For the foregoing reasons, respondents’ motion is denied in its entirety, without costs.

. The notice of motion states that the relief sought is dismissal of the entire complaint but the initial supporting papers limit that request to the SEQRA claims. In addition, in their reply memorandum of law, respondents seek to make a request that the petitioners’ fifth and sixth causes of action, which seek declaratory and injunctive relief under ECL 15-0701, also be dismissed on the ground that they are not yet ripe for review. This latter request for relief will not be considered herein because respondents have not timely or properly raised it. This relief was not sought in the respondents’ motion and was raised for the first time in a reply memorandum. The court’s discussion will, accordingly, be limited to the issues of capacity and standing which were raised by respondents in their motion and which are properly before the court.

. SLPID’s governing board is made up of five commissioners, all appointed by the chair of the Saratoga County Board of Supervisors, with approval of the entire Board — one appointed to represent the City and each of the towns, respectively, and one commissioner-at-large appointed to represent the County of Saratoga. SLPID’s authority, as conferred by the Legislature, includes hiring employees; levying taxes; managing, controlling and insuring district property; performing and overseeing aquatic weed control; and, upon approval by the district electorate, “adopt[ing] restrictions and controls as to the . . . type of structures that may be erected on lands of the district and into the waters of [the district].” (L 1986, ch 460, § 8 [d].) It is also authorized to “[t]ake any and all other actions reasonably necessary and proper to further [its] purposes.” (L 1986, ch 460, § 7 [p].)