■ In the Matter of SARATOGA LAKE PROTECTION AND IMPROVEMENT DISTRICT et al., Respondents, v DEPARTMENT OF PUBLIC WORKS OF THE CITY OF SARATOGA SPRINGS et al., Appellants. [846 NYS2d 786]—

Spain, J. Appeals (1) from an order of the Supreme Court (Nolan, Jr., J.), entered February 10, 2006 in Saratoga County, which, in a combined proceeding pursuant to CPLR article 78

and action for declaratory judgment, denied respondents' motion to dismiss the petition/complaint, and (2) from a judgment of said court, entered September 25, 2006 in Saratoga County, which, among other things, partially granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul a determination of respondent City Council of the City of Saratoga Springs making certain findings pursuant to the State Environmental Quality Review Act.

In 1988, the Department of Environmental Conservation (hereinafter DEC) issued a report recommending that respondent City Council of the City of Saratoga Springs (hereinafter respondent) investigate alternative long-term sources of potable drinking water, including tapping ground water supplies or drawing water from Saratoga Lake, the Great Sacandaga Reservoir or the upper Hudson River. In response, respondent hired a consultant to investigate alternatives and it eventually recommended a plan for drawing water from Saratoga Lake, called the Water Source Development Project (hereinafter the Project).

In January 2001, acting as lead agency, respondent issued a positive declaration for the Project and, subsequently, completed a scoping process, prepared and published a draft environmental impact statement (hereinafter DEIS), held hearings and accepted comments. In March 2004, after the formal DEIS public comment period had been closed, respondent nevertheless permitted and received a presentation regarding the DEIS from petitioner Saratoga Lake Protection and Improvement District (hereinafter SLPID). Thereafter, a final environmental impact statement (hereinafter FEIS) was prepared, adopted and published. On or about October 18, 2005, respondent passed a resolution accepting the FEIS as complete and finding that the Project presented a solution to the City's water needs which minimizes adverse environmental impacts to the maximum extent practicable.

In this combined declaratory judgment action and CPLR article 78 proceeding, petitioners challenge the adequacy of respondent's review of the Project under the State Environmental Quality Review Act (hereinafter SEQRA; see ECL art 8), seeking to annul respondent's SEQRA determinations, to enjoin respondents from obtaining a water supply permit and a declaration that SLPID is an involved agency under SEQRA. Respondents made a preanswer motion to dismiss the petition pursuant to CPLR 3211 (a) (3) on the grounds that SLPID did not have the legal capacity to sue and that none of the petition-

ers had standing. In February 2006, Supreme Court denied respondents' motion. Thereafter, in a judgment entered September 25, 2006, Supreme Court held that SLPID was not an involved agency but, finding that respondent failed to adequately consider the environmental impacts the Project could have on activities, land use and development within the lake's watershed, annulled respondent's October 18, 2005 SEQRA determination. Respondents appeal from both the court's February 2006 order and its September 2006 judgment.[1]

Initially, respondents challenge Supreme Court's February 2006 order, asserting that petitioner Town of Saratoga, petitioner Town of Stillwater (hereinafter collectively referred to as the Towns), SLPID and petitioner Saratoga Lake Association, Inc. (hereinafter SLA) all lacked standing to sue and, as such, their SEQRA claims must be dismissed.[2] To establish standing to challenge respondent's governmental action, it was incumbent upon SLPID to demonstrate both that it might suffer an "injury in fact"—i.e., actual harm by the action challenged that differs from that suffered by the public at large—and that such injury falls within the zone of interests, or "concerns[ ] sought to be promoted or protected by the statutory provision under which the agency has acted" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773 [1991]; *see Matter of Graziano v County of Albany*, 3 NY3d 475, 479 [2004]; *Matter of Save Our Main St. Bldgs. v Greene County Legislature*, 293 AD2d 907, 908 [2002], *lv denied* 98 NY2d 609 [2002]; *Matter of Dyer v Planning Bd. of Town of Schaghticoke*, 251 AD2d 907, 908-909 [1998], *appeal dismissed* 92 NY2d 1026 [1998], *lv dismissed* 93 NY2d 1000 [1999]).

Supreme Court correctly concluded that SLPID has standing. SLPID's enabling legislation provides that it was formed to "supervise, manage and control" Saratoga Lake and the surrounding lands to ensure real property values, improve water quality so as to enhance recreational opportunities and conserve fish and wildlife, and enhance the beauty of the surrounding

---

1. As an appeal as of right does not lie from a nonfinal order in a CPLR article 78 proceeding (*see* CPLR 5701 [b]), respondents' appeal from the February 2006 order must be dismissed (*see Matter of Hebel v West*, 25 AD3d 172, 175 n 1 [2005]). However, respondents' appeal from the final judgment brings up for review this order (*see id.*).

2. Respondents' original motion to dismiss was also premised on the ground that SLPID did not have the legal capacity to sue. Inasmuch as respondents have not addressed on appeal the issue that found that SLPID had the capacity to bring suit, it is deemed abandoned (*see Carney v Carozza*, 16 AD3d 867, 868 n [2005]; *Jones v General Motors Corp.*, 287 AD2d 757, 759 n 1 [2001]).

municipalities (L 1986, ch 460, § 1). Furthermore, SLPID has the power "[t]o acquire, manage, operate, maintain, repair and replace aquatic weed control equipment," as well as to "[t]ake any and all other actions reasonably necessary and proper to further the purposes of the district" (L 1986, ch 460, § 7 [c], [p]). The complaint alleges that the Project will limit SLPID's options for controlling aquatic weeds; specifically, it states that more aggressive methods than the current methodology of mechanically harvesting weeds are necessary and that at least one alternative—the lake-wide application of certain herbicides—would be incompatible with the use of Saratoga Lake as a water supply source. The FEIS acknowledges that the Project will impact weed control methodology, at least insofar as recognizing that, if a herbicide alternative were to be implemented, manual harvesting will be necessary within one-quarter mile of the intake pipe. Given these specific allegations, we conclude that Supreme Court did not err in finding that SLPID has alleged a sufficiently particularized injury. Further, the injury that SLPID seeks to prevent falls squarely within the zone of interests protected by SEQRA and, thus, Supreme Court did not err in finding that SLPID had standing (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 772-773; *Matter of Graziano v County of Albany*, 3 NY3d at 479; *Matter of Otsego 2000 v Planning Bd. of Town of Otsego*, 171 AD2d 258, 260 [1991], *lv denied* 79 NY2d 753 [1992]).

We also conclude that SLA has demonstrated standing to challenge respondent's determination. To establish standing, an organization must demonstrate that at least one of its members would have standing to sue individually, that the interests it asserts are germane to its purpose and that the resolution of the claim does not require the participation of its individual members (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 775; *Matter of County of Oswego v Travis*, 16 AD3d 733, 734 [2005]). Here, respondents' challenge to SLA's standing is premised solely on SLA's ability to demonstrate standing on the part of one of its members.

SLA asserts its standing based on alleged injuries "different in kind or degree from that of the public at large" that would be suffered by SLA president Wilma Koss (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 775). Koss alleges that her property is located within 1,000 feet of the development with an unobstructed view of the proposed pumping infrastructure (*see Matter of Ziemba v City of Troy*, 37 AD3d 68, 71 [2006], *lv denied* 8 NY3d 806 [2007] [a petitioner has standing where proposed project will affect the scenic view from his or her resi-

dence]). Koss also alleges that the Project will result in restrictions in areas that she and her family have historically enjoyed using for boating, fishing and swimming. Although the restrictions that Koss cites will result in the same kind of harm as suffered by the public at large, the proximity of Koss's property to the proposed site will result in her suffering that harm to a greater degree. Thus, SLA has demonstrated individual standing on the part of one of its members (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 775; *Matter of Ziemba v City of Troy*, 37 AD3d at 71).

With respect to the Towns, we reach a different conclusion. In order to establish standing, a municipality must demonstrate "how its personal or property rights, either personally or in a representative capacity, will be directly and specifically affected apart from any damage suffered by the public at large" (*Matter of City of Plattsburgh v Mannix*, 77 AD2d 114, 117 [1980]; *see Matter of Dyer v Planning Bd. of Town of Schaghticoke*, 251 AD2d at 909). Here, the complaint alleges that regulations and measures that would be necessary in implementing the Project will "entail significant restrictions on both development and agricultural operations within the Saratoga Lake watershed." In its supporting affidavit, the Town of Saratoga attempts to define the threatened injury with more specificity, citing loss of the ability to manage and direct development within its watershed, loss of opportunities for lake recreation, damage to that Town's economy, limitations and loss of agriculture and continued suburbanization of the Town, loss of wetlands and a reduction in land values. The Town of Stillwater submitted an affidavit making general reference to the fact that the project will "have direct effect on land use." These generalized claims of harm have failed to identify any "specific, direct environmental harm" to the Towns' personal or property rights, either personally or in a representative capacity, that differs from that of the public at large and, thus, the Towns lack standing to challenge respondent's determination (*Matter of Boyle v Town of Woodstock*, 257 AD2d 702, 704 [1999]; *see Matter of Dyer v Planning Bd. of Town of Schaghticoke*, 251 AD2d at 909; *Matter of Otsego 2000 v Planning Bd. of Town of Otsego*, 171 AD2d at 260; *Matter of City of Plattsburgh v Mannix*, 77 AD2d at 117).

Turning to the merits, we conclude that respondent's SEQRA assessment and ultimate determination regarding the environmental impact of the Project should have been upheld. The relevant inquiry is whether respondent's determination " 'was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discre-

tion' " (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 416 [1986], quoting CPLR 7803 [3]; *see Matter of Cathedral Church of St. John the Divine v Dormitory Auth. of State of N.Y.*, 224 AD2d 95, 100 [1996], *lv denied* 89 NY2d 802 [1996]). In evaluating an agency's SEQRA assessment, a court is charged with making sure that "the agency identified the relevant areas of environmental concern[ ] . . . and took a 'hard look' at them" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 417; *see Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush*, 16 AD3d 715, 721 [2005]; *Matter of Save the Pine Bush v Planning Bd. of City of Albany*, 298 AD2d 806, 807 [2002]). "[T]he merits of the action and its ultimate impact on the petitioning party or others are not in question" (*Matter of Har Enters. v Town of Brookhaven*, 74 NY2d 524, 529 [1989]). Furthermore, an agency's obligation under SEQRA "must be viewed in light of a rule of reason," realizing that "[n]ot every conceivable environmental impact, mitigating measure or alternative must be identified and addressed" before the substantive dictates of SEQRA are satisfied (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 417; *see Matter of Save the Pine Bush v Planning Bd. of City of Albany*, 298 AD2d at 807; *Aldrich v Pattison*, 107 AD2d 258, 266 [1985]).

Supreme Court annulled respondent's determination on the ground that respondent failed to give appropriate consideration to the Project's potential impact on "activities, land use, and development within the lake's watershed," specifically finding fault with respondent's failure to consider the impacts of watershed protection measures that could be necessary to protect the lake's water quality. Upon our review of the record, we conclude that respondent amply complied with SEQRA by giving due consideration to the need for protections in the watershed area and setting forth a plan for implementing such protections.

Based on data from as far back as 1972, and an extensive water sampling program, respondent concluded that the quality of Saratoga Lake water has progressively improved since the early 1970s. As such, respondent determined that current recreational uses of the lake or on the lake, and current activities and uses within the watershed, are not detrimental to potential use of Saratoga Lake as a source of public water and, thus, the implementation of mandatory restrictions is not necessary. Instead, citing—among other things—reports on protecting the watershed completed for SLPID in 2001 and 2002, respondent proposed a detailed watershed protection plan pursuant to which it committed to working cooperatively with watershed

communities, businesses and individuals to encourage the voluntary implementation of appropriate watershed protection strategies. This watershed management plan is set out in detail in the FEIS. This approach to protecting the watershed was tacitly approved by the Department of Health (hereinafter DOH)—the agency with exclusive authority to establish compulsory watershed rules and regulations. In a letter dated July 7, 2003 in response to respondent's DEIS, DOH wrote that: "[T]he primary alternative presented in the DEIS, of using Saratoga Lake as an additional water supply source[,] . . . is a viable solution to [respondent's] long term and emergency source needs [and] if the [Project] is pursued [respondent] must be prepared to commit to ensuring that a long-term watershed protection program, possibly including watershed rules and regulations or an equivalent program, such as the proposed [SLPID] draft watershed protection plan, is implemented." Respondent reasonably interpreted the letter, both in its FEIS and in its findings statement, to mean that its proposed watershed protection program met the criteria identified by DOH.

In considering the need for watershed controls that might be associated with the Project, respondent included in its FEIS 68 pages of responses to comments on the topic that were received in response to its DEIS, addressing 55 separate comments, at least 26 of which were from petitioners. Further, although Supreme Court took issue with the sufficiency of respondent's data on environmentally regulated facilities within the watershed, we note that appendix H of the DEIS includes over 2,000 pages of data related to these facilities, including maps identifying each facility's location.

Accordingly, on this record, we conclude that respondent took the requisite hard look at the impact of the Project on the watershed area, including finding that the proposed voluntary watershed protection plan was sound. Petitioners' contrary view that mandatory watershed regulations are necessary does not alter the fact that respondent complied fully with SEQRA. Indeed, "[n]ot every conceivable environmental impact, mitigating measure or alternative must be identified and addressed" before the substantive dictates of SEQRA are satisfied (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 417; *see Matter of Save the Pine Bush v Planning Bd. of City of Albany*, 298 AD2d at 807; *Aldrich v Pattison*, 107 AD2d at 266), and "[n]othing in the law requires an agency to reach a particular result on any issue, or permits the courts to second-guess the agency's choice" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 417; *see Matter of North Country Citizens*

*for Responsible Growth, Inc. v Town of Potsdam Planning Bd.,* 39 AD3d 1098, 1102 [2007]; *Matter of Ellsworth v Town of Malta,* 16 AD3d 948, 950 [2005]; *Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush,* 16 AD3d at 721).

We also disagree with Supreme Court's conclusion that respondent's FEIS was deficient in that it lacked an analysis of current land development projects, as well as those under active consideration or projected, and how such projects might impact respondent's Project or pose a threat to degrade the water in Saratoga Lake. Pursuant to SEQRA and its implementing regulations, " 'the lead agency must consider reasonably related long-term, short-term and cumulative effects, including other simultaneous or subsequent actions which are: (1) included in any long-range plan of which the action under consideration is a part; (2) likely to be undertaken as a result thereof; or (3) dependent thereon' " (*Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 80 NY2d 500, 512-513 [1992], quoting 6 NYCRR former 617.11 [b]; *see* ECL 8-0109; 6 NYCRR 617.7 [c] [2]; *Matter of Sabad v Houle,* 283 AD2d 851, 852 [2001]). Absent one of these circumstances, consideration of the cumulative effects of other projects is permissible but not mandatory (*see Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 80 NY2d at 513; *Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 205-206 [1987]). Here, no allegation has been made that respondent's Project is part of a larger, long-range plan for development or that any of the other projects in the Saratoga Lake watershed are "likely to be undertaken as a result [of]" or are "dependent [on]" the Project (6 NYCRR 617.7 [c] [2] [ii], [iii]). As such, we agree with respondent that Supreme Court erred in annulling its SEQRA determination based on the lack of a cumulative impact analysis with regard to other unrelated projects in the Saratoga Lake watershed.

Petitioners have not appealed from any portion of Supreme Court's judgment and, in their briefs to this Court, have not objected to Supreme Court's conclusions that, contrary to the allegations in the petition, respondent in fact took the requisite "hard look" at the potential impact of the Project on Saratoga Lake's water levels, archeological resources, availability of methods for aquatic weed control and whether the Project will have growth inducing impacts. Our review of the record confirms Supreme Court's determination that respondent's review of these issues is in full compliance with SEQRA's demands and that the conclusions reached by respondent with

respect to these issues were not arbitrary or capricious (*see Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 416).

Supreme Court expressly declined to rule on petitioners' remaining assertion in its petition/complaint that the FEIS is deficient because respondent failed to properly assess alternatives to the Project, specifically its alleged failure to give adequate consideration to a proposal currently under consideration by Saratoga County to develop a county-wide water supply and distribution system utilizing the upper Hudson River as a raw water source. Given the extensive record before us, that no hearings were required and the parties relied on documentary submissions, and in the interest of judicial economy, we now reach the issue (*see Matter of Verna HH.*, 302 AD2d 714, 715 [2003], *lv dismissed* 100 NY2d 535 [2003]).

There can be no dispute that respondent considered the county alternative; the county proposal is addressed in its own section of the FEIS, the impacts of a city-wide alternative utilizing the upper Hudson River as a water source is independently considered in a separate section and, in addition to the original and updated county-wide plans, the record includes over 150 pages of correspondence and memoranda reflecting the exchange of information and negotiations between the County and the City with regard to the City's involvement, if any, in the county-wide proposal. The petition's essential objection to respondent's treatment of the county proposal alleges that respondent purposefully inflated the cost of the county proposal to support its conclusion that the county alternative was not as cost effective as the Project. We are unpersuaded that this record contains sufficient evidence to conclude that respondent inaccurately calculated the costs involved or that its discretionary decision that the Project presents a better option than the county proposal for the residents of the City of Saratoga Springs is otherwise arbitrary.

Pursuant to the county proposal, the City would purchase a minimum supply of water at a fixed rate for 10 years. Comparing the cost of supplying the City's water needs through the Project (estimated at $1.34 per 1,000 gallons) as opposed to purchasing the water at the initial, fixed rate from the County ($1.95 per 1,000 gallons), respondent concluded that the Project was a less expensive alternative. Further, citing the need for future capital investments to support the county-wide proposal and concerns about the County's proposed funding structure and the impact of PCB contamination in the upper Hudson River, respondent rationally concluded that water rates could

increase significantly after 10 years. Although the petition asserts that it was error for respondent to base its cost analysis on the cost of supplying 100% of the water needs by the County, rather than the cost of purchasing water on an as-needed basis, because the Project would have the capacity to supply the City with 100% of its water supply—should the need arise—we conclude that the comparison and cost analysis employed by respondent are not irrational.

Finally, the petition suggests that the FEIS fails to adequately address the "no action" alternative, inasmuch as well over 10 years have passed since the DEC report which recommended finding an alternate water supply—on the basis that Loughberry Lake would begin to exhibit problems with algae bloom within 10 years—was issued, and Loughberry Lake remains a viable water source. DEC's report, however, identifies a variety of problems with the continued use of Loughberry Lake as the City's principal water supply which present a rational basis for respondent's conclusion that some action is necessary. Significantly, DEC found that even at the City's usage levels in 1986, "it is quite clear that the system presently is stressed beyond its reliable capacity during dry periods of the year." Further, DEC expressed concerns that increased urbanization of the area could create an emergency situation—such as a toxic spill or an unacceptable increase in pollutants in the watershed, both scenarios described as "distinct possibilities"—which could create the need for an immediate, alternate water supply source. Given this information, and assuming a reasonable amount of growth in the area, we cannot conclude that respondent's conclusion to reject the "no action" alternative was arbitrary or capricious.

Mercure, J.P., Crew III, Peters and Rose, JJ., concur. Ordered that the appeal from the order is dismissed, without costs. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted the petition; petition dismissed in its entirety; and, as so modified, affirmed. [See 11 Misc 3d 780 (2006).]