# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**66**
**CA 16-01200**
PRESENT: WHALEN, P.J., SMITH, PERADOTTO, AND CURRAN, JJ.

---

IN THE MATTER OF CITIZEN REVIEW BOARD OF THE
CITY OF SYRACUSE, PETITIONER-PLAINTIFF-RESPONDENT,

V                                                  OPINION AND ORDER

SYRACUSE POLICE DEPARTMENT, FRANK L. FOWLER,
AS CHIEF OF POLICE AND CITY OF SYRACUSE,
RESPONDENTS-DEFENDANTS-APPELLANTS.

---

ROBERT P. STAMEY, CORPORATION COUNSEL, SYRACUSE (JOHN A. SICKINGER OF
COUNSEL), FOR RESPONDENTS-DEFENDANTS-APPELLANTS.

BOUSQUET HOLSTEIN PLLC, SYRACUSE (HARRISON V. WILLIAMS, JR., OF
COUNSEL), FOR PETITIONER-PLAINTIFF-RESPONDENT.

---------------------------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Onondaga County
(Spencer J. Ludington, A.J.), entered April 29, 2016 in a CPLR article
78 proceeding and declaratory judgment action.  The order denied the
motion of respondents-defendants to dismiss the petition/complaint.

It is hereby ORDERED that the order so appealed from is
unanimously affirmed without costs.

Opinion by CURRAN, J.:

Respondents-defendants (respondents) appeal from an order denying
their motion to dismiss this hybrid CPLR article 78 proceeding and
declaratory judgment action on the grounds of lack of capacity and
standing.  We conclude that the order should be affirmed.

### I.  Background

In 2011, the Common Council of the City of Syracuse (Common
Council) amended Local Law 11 of 1993 (ordinance), which had
previously established petitioner-plaintiff, Citizen Review Board of
the City of Syracuse (CRB).  The purpose of the ordinance was "[t]o
establish an open citizen-controlled process for reviewing grievances
involving members of the Syracuse Police Department and provide a non-
exclusive alternative to civil litigation."  The ordinance further
states that, "[i]n order to insure public accountability over the
powers exercised by members of the Syracuse Police Department while
preserving the integrity of the agency that employs them, citizen
complaints regarding members of the Syracuse Police Department shall

be heard and reviewed fairly and impartially by the review board."

The CRB consists of 11 members, who "shall be residents of the City of Syracuse and should aspire to reflect the City's diverse community with respect to age, disability, ethnicity, gender, geography, language, race, religion and sexual orientation," and is independent of the Syracuse Police Department. The ordinance provides that the CRB "shall hear, investigate and review complaints and recommend action regarding police misconduct," and also may make recommendations with respect to changes in police policies and procedures.

Pursuant to the ordinance, "[w]ithin 60 days of the receipt of a complaint, the CRB shall complete its investigation, determine whether there is reasonable cause to proceed to a hearing, conduct a hearing, and issue its findings and recommendations to the Chief [of Police] and the Corporation Counsel." The ordinance further provides that, "[w]ithin thirty (30) days of the receipt of a recommendation from a hearing panel, the Chief of Police shall advise the [CRB] in writing as to what type of actions or sanctions were imposed, and the reasons if none were imposed." The CRB administrator also must regularly publish reports that document, among other things, the total number and type of complaints, the number of cases involving recommendation for sanctions, the number of cases where sanctions were imposed, the number of cases reviewed by the full CRB, the length of time each case was pending before the CRB, and the number of complainants who filed a notice of claim against the City of Syracuse while their complaints were being considered by the CRB.

In furtherance of the CRB's duties, the ordinance provides that the CRB, "by majority vote of its members, may authorize the issuance of a subpoena" and that "[CRB] subpoenas are enforceable pursuant to relevant provisions of Article 23 of the [CPLR]." The CRB also is authorized, in the event of a conflict with the Corporation Counsel, to seek and retain independent legal counsel.

On October 28, 2015, in response to four CRB findings sent to the Chief of Police, the Chief of Police notified the CRB administrator via a letter that, because he "did not receive findings from the [CRB] within the sixty (60) days allotted by Local Law 11, Section 7, Sub 3a," the Syracuse Police Department "was forced to proceed without recommendations from the [CRB]" in those four matters. The Chief of Police also refused to "advise the board in writing as to what type of actions or sanctions were imposed, and the reasons if none were imposed," as required by the ordinance.

On February 5, 2016, the CRB commenced this hybrid CPLR article 78 proceeding/declaratory judgment action seeking, inter alia, a judgment directing the Chief of Police to comply with the ordinance by advising the CRB in writing as to what type of sanctions or actions were imposed against the officers and the reasons if none were imposed.

On March 9, 2016, respondents moved to dismiss the

petition/complaint (petition) pursuant to CPLR 3211 and 7804 (f), arguing, among other things, that the CRB lacked capacity and standing to institute the proceeding/action.  Supreme Court granted that part of the motion in which respondents contended that the City of Syracuse was not a proper party to the CRB's request for declaratory relief, and otherwise denied the motion, and respondents appeal.

The matters raised in this appeal are issues of first impression in this Department, and we conclude that the CRB has both the capacity and standing to institute this proceeding/action for the relief sought in the petition in furtherance of its independent duties under the ordinance (*see Matter of Green v Safir*, 174 Misc 2d 400, 405-406, *affd* 255 AD2d 107, *lv denied* 93 NY2d 882).

II.  The CRB's Legal Capacity to Sue

We first address respondents' contention that the CRB lacks legal capacity to sue.  As the Court of Appeals noted in *Community Bd. 7 of Borough of Manhattan v Schaffer* (84 NY2d 148, 155-156), "[g]overnmental entities created by legislative enactment present . . . capacity problems.  Being artificial creatures of statute, such entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate."  However, "[a]n express grant of authority is not always necessary . . . Rather, capacity may be inferred as a necessary implication from the powers and responsibilities of a governmental entity" (*Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs.*, 5 NY3d 36, 42), "provided, of course, that 'there is no clear legislative intent negating review' " (*Community Bd. 7 of Borough of Manhattan*, 84 NY2d at 156; *see Matter of New York State Bd. of Examiners of Sex Offenders v Ransom*, 249 AD2d 891, 891).

Here, pursuant to the plain language of the ordinance, the CRB is entitled to the response from the Chief of Police required by section seven (3) (g) of the ordinance in furtherance of its independent duties thereunder (*see Green*, 255 AD2d at 107-108).  Like the Public Advocate in *Green*, the CRB is charged in the ordinance with determining the effectiveness of the police department's responses to civilian complaints and ascertaining whether the police department's "failure to prosecute and/or impose discipline against misbehaving officers is indicative of systemic problems in the response to complaints" (*Green*, 174 Misc 2d at 402).  Thus, in light of the CRB's mandate and obligation to handle grievances filed by citizens against police officers, it is squarely within the CRB's "zone of interest" to take action to obtain compliance with the ordinance.  Further, pursuant to the ordinance, the CRB has both subpoena power, including the authority to enforce those subpoenas in court, and the power to retain independent counsel.  Such factors, together with a lack of legislative intent that negates review, provide a clear indication of an implied power to sue (*see Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs,* 11 Misc 3d 780, 782-785, *mod on other grounds* 46 AD3d 979, *lv denied* 10 NY3d 706; *cf. Community Bd. 7 of Borough of Manhattan*, 84 NY2d at 157-158).

Moreover, without the required response letters from the Chief of Police, the CRB cannot publicly report the number of cases where sanctions were imposed as required by the ordinance, thereby depriving the CRB and the public of the ability to assess the disciplinary practices of the Chief of Police as intended by the ordinance (*see generally Community Bd. 7 of Borough of Manhattan*, 84 NY2d at 156; *Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d 436, 444-445, *rearg denied* 61 NY2d 759).

### III.  The CRB's Standing

We turn next to the issue of standing.  It is well settled that

> "[s]tanding is an element of the larger question of justiciability . . . The various tests that have been devised to determine standing are designed to ensure that the party seeking relief has a sufficiently cognizable stake in the outcome so as to cast[] the dispute in a form traditionally capable of judicial resolution . . . Often informed by considerations of public policy . . . , the standing analysis is, at its foundation, aimed at advancing the judiciary's self-imposed policy of restraint, which precludes the issuance of advisory opinions" (*Community Bd. 7 of Borough of Manhattan*, 84 NY2d at 154-155 [internal quotation marks omitted]).

Thus, in order to establish standing, the CRB "must show injury in fact, meaning that [the CRB] will actually be harmed by the challenged . . . action.  As the term itself implies, the injury must be more than conjectural.  Second, the injury [the CRB] asserts must fall within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted" (*Matter of Graziano v County of Albany*, 3 NY3d 475, 479 [internal quotation marks omitted]).

Here, the CRB's enabling legislation provides that it was formed to "establish an open citizen-controlled process for reviewing grievances involving members of the Syracuse Police Department" and that "citizen complaints regarding members of the Syracuse Police Department shall be heard and reviewed fairly and impartially by the review board."  Further, the CRB is required by the ordinance to report and publish the number of cases in which sanctions were imposed.  Inasmuch as the CRB cannot perform its legislative mandate without the Chief of Police's compliance with the corresponding legislative mandate that he "advise the [CRB] in writing as to what type of actions or sanctions were imposed, and the reasons if none were imposed," we conclude that the CRB has sustained a sufficiently particularized injury that falls squarely within the zone of interests set forth in the ordinance (*see Saratoga Lake Protection & Improvement Dist.*, 46 AD3d at 981-982).

## IV.  Conclusion

Accordingly, we conclude that the CRB has both the capacity and standing to institute this proceeding/action seeking, inter alia, to compel the Chief of Police to comply with the legislative mandate at issue, and the order therefore should be affirmed.

Entered:  March 24, 2017                    Frances E. Cafarell
                                            Clerk of the Court